from El Paso and I represent Mr. Madrid. As all appellate lawyers do I've laid out a road map of what I'd like to argue with full knowledge that I'm not going to be able to stick to it, but I'll do that as best I can. I'd like to begin with the pre-trial errors that I noted in my brief, starting first and foremost with the two strongest ones, two strongest arguments appellant has, Mr. Madrid, the speedy trial. In this case, as reflected in the brief, there never was a single order tolling the speedy trial clock in Mr. Madrid's case. Mr. Madrid moved that the case be dismissed on speedy trial grounds and acknowledging that there was no speedy trial tolling order during the life of the case, at least before the district judge entered his order, the district judge entered a retroactive order relying on a text order that he issued purporting to grant a government motion. In that government motion, the government did seek to toll the speedy trial clock, but only to a docket call. And in the Western District of Texas we have a local rule that says the relief that you're seeking must be laid out with particularity in your proposed order. In its proposed order, the government sought only the tolling of the speedy trial clock to the docket call. Their motion was filed on January 31st, the next docket call was on February 3rd, and on February 3rd the case was called for docket, but thereafter nothing tolling the speedy trial clock. And indeed, the order on which the district court relies, on which it relied retroactively, doesn't say anything about tolling the speedy trial clock. All it says, it's granting the government's motion to declare the case complex, but as I laid out in my brief, declaring the case complex is but one of four factors that a court takes into consideration when determining whether to grant an ends of justice continuance for purposes of speedy trial. There is not a single order in this entire case that refers to the speedy trial clock, and in its response, the government does not dispute that the speedy trial clock expired on either May 14th, 2012, or May 21st, 2012. The case didn't proceed to trial until December of 2012, and there's nothing tolling the speedy trial clock, and for that reason alone, this case must be remanded. Didn't the judge set out in the record why he was granting the continuance? He did, Your Honor. All right. The way the Fifth Circuit and the law across all of the circuits stands, including Supreme Court law that I laid out in my brief, a judge is allowed to, after the fact, retroactively explain why the court granted the continuance. But in this case, there was nothing to explain. And as I laid out in the brief, the retroactive— Because he found that it was a complex case. The two go hand in hand. That's one of the four factors, and I'm not disputing that the court explained the reason why a continuance in the first place could have been granted. My point, Your Honor, is that there was no order to explain, and the case law that I cite in the brief says specifically the order tolling the speedy trial clock must be entered before the speedy trial clock expires. You can explain your reasons after. You're just complaining because it was a text order? Well, not that it was a text order, but the text order is granting relief. The text order doesn't say anything about tolling the speedy trial clock. The text order merely says it's designating the case complex. And if the district judge relied on the text order to say that's what I meant, I meant to grant the government's motion to toll the speedy trial clock. The government only asked in its motion to toll the speedy trial clock until the February 3rd docket call. So if the district judge intended to grant the relief the government was seeking, all it granted was a tolling of the speedy trial clock until February 3rd, 2012. There's nothing accounting for that time between February 3rd, 2012 and the time of trial in December 12th. And so did you file for dismissal after the docket call? I did. I filed a motion. I did not. I didn't remember that. My motion was to compel the court. I'm sorry. I did file the motion after the docket call. I did file it. A motion to dismiss on speedy trial grounds. That's what the issue is. Right. And the court denied my motion. So the other pretrial issue that I wanted to raise before the court is the failure of the district court to grant my motion to compel the disclosure of the grand jury transcripts. In the Fifth Circuit, a defendant can demonstrate, if he's able to demonstrate, that the material he needs is needed to avoid a possible injustice. The need for disclosure is greater than the continued need for secrecy. And the request is structured only to cover the material needed. Rule 6 allows a defendant to get the contents of what occurred before the grand jury. I filed a motion to compel the disclosure of the grand jury transcripts. And attached to my motion, I included FBI reports and bank records showing that the statements contained in the original indictment contained material falsities. In particular, I was able to show that as to two material mail fraud counts, two of those counts relied on a December 21, 2006, check from one of the co-defendants, Ruben Sonny Garcia, to an unindicted co-conspirator, Jan Zavala. The representation in the indictment that the grand jury returned was that that check was mailed. Therefore, it constituted a mail fraud. That was the basis of two counts, Counts 4 and Count 8 of the original indictment. The government in its indictment also used that ostensible mailing, the December 21, 2006 mailing, in its introduction, on which every single count of the original indictment, Counts 1 through 11, relied. In my motion to compel the disclosure of the grand jury transcripts, I was able to show that the FBI had interviewed the unindicted co-conspirator, Jan Zavala, on April 10, 2010, and then again on November 21, 2011. I attached the actual FBI reports to my motion, showing that in both of those interviews, Jan Zavala unequivocally told the FBI that that check was not mailed. It was hand-delivered. So there is no dispute that that could happen. I even attached the bank records showing that the check was written on the same day it was deposited, proving that there's no way it could have been mailed. That was one of the basis that I sought to get the grand jury transcripts because I wanted to file a motion to dismiss based on grand jury perjury. Now, are those materials misstatements? Of course, in two ways. Number one, you can't have a substantive mail fraud count without a mailing, and the government knew at the time they returned the indictment those weren't mailed because the FBI reports that the government gave to me showed that. But the second thing and the more important thing is those mail fraud counts were included in the introduction, and they were included as substantive mail fraud counts because that is the only check in this entire case from Ruben Sonning Garcia to Jan Zavala that fell within the limitations period. So my argument was that – I don't think that's correct. That's the last check from Ruben Sonning Garcia to Jan Zavala. But then when they superseded, they dropped the hand delivery check. Exactly. And, Your Honor, that goes directly to my point. It's rare that a defendant at the trial court level is able to establish with such particularity that misstatements were made before the grand jury. I attach the FBI reports. Even the district court itself, in its order denying my motion to disclose, stated in its order that the defendant adduced evidence to support its contentions, and the district court used the word troubling with respect to the allegations. Just for that one check, though. The other checks were timely. They were not, Your Honor. They preceded – that was the last check. The December 21st check was the last check from Ruben Sonning Garcia to Jan Zavala. That's the only one that made it within the limitations period. Now, the second thing that I was able to show is in the original indictment, the government alleged that this bribery scheme was to, quote-unquote, obtain the LKG contract. And I attached, again, FBI reports showing that on at least three occasions over the course of months, if not years, Dolores Briones, the El Paso County judge, the alleged recipient of the bribes, told the FBI on three occasions that she never met with the defendants until after the contract was awarded. Well, let's assume everything you've said is right. Okay. What's the remedy? I mean, the government, arguably when you blew the whistle, filed – got a superseding indictment, eliminated all this stuff. So is it a case of no harm, no foul? What's your best case for the proposition that what's happened here isn't already cured? Well, it's not so much a case, Judge King, as much as it is pointing out the error because the district court took the position no harm, no foul because the government corrected the misrepresentations contained in the original indictment. My position is that the superseding indictment, which contains the counts of conviction – the only counts of conviction for Mr. Madrid is barred by limitations, and the only way it's saved is by the pendency of the original indictment. So had those grand jury transcripts been disclosed to me and I filed a motion to dismiss based on grand jury perjury, which for all intents and purposes is borne out, then the superseding indictment is barred by limitations because the case law says, as I pointed out in my brief, if a superseding indictment is returned beyond limitations, the only way it can survive is if the original indictment itself remains alive. During a hearing, and this is in the record, there was a November 15, 2012 pretrial motions hearing where I specifically pointed out to the district court – this is me, it's on page 27 – I said the first indictment is still alive, and the district court says, no sir, no it isn't. And then I explained, well then I said I have Fifth Circuit case law, and it's this case law that's contained in my brief that says the original indictment remains pending even with the return of the superseding indictment, and it remains pending – I don't even know if it was ever dismissed. But had I been able to file that motion to dismiss and the district court grant it based on grand jury perjury, the second superseding indictment is barred by limitations and the convictions must be vacated. So I hope that answers your question, Judge King. I thought there were three mailings that occurred after December 21st. There were other mailings that were done, but those were between – those were not from Ruben Sonny Garcia to Jan Zavala. Other mailings to include, there were letters that were sent by El Paso County sometime in 2007, but as I argue, those aren't in furtherance of any conspiracy. In fact, one of the mailings on which the government relied was a letter to the defendants telling them your contract has been rescinded. But the government, in its charging document, used that as one of the mailings in furtherance of the conspiracy. So you contend that we must dismiss the whole case? Well, what I'd actually like to do – Is it possible for us to remand for further proceedings on this? What I'd like the court to do is take a close look at my sufficiency arguments because in hundreds of pages of briefing, it's tough on an oral argument to explain it. But the bottom line is this. In this case, every single count is soaked in this theory that Ruben Sonny Garcia paid Jan Zavala, who then paid money to the El Paso County judge, to help with a contract. The connection that they had to make is to my client, Mr. Madrid, and there isn't any evidence. They had Ruben Sonny Garcia, the one who wrote the checks, as their star witness sitting on the stand, and it's telling. They never asked him, was there an agreement between you and Mr. Madrid to bribe Dolores Briones? That never came out, and in my brief, I cited every single snippet, which the government joined as well, to try every single snippet in which it could arguably be said that there was a connection. But nothing shows, nothing shows that Mr. Madrid had knowledge that the payments he was making was ultimately going to the El Paso County judge. And Judge Dennis, in answer to your question, what I'd really like is this case to be reversed and remanded for a judgment of acquittal, reversed and rendered for judgment of acquittal. My time is up. May it please the court. Margaret Embry. May it please the court, Margaret Embry for the United States. May it please counsel in the court. First, there were other mailings after that time period that you had mentioned. There were the mailings from SAMHSA, the federal agency, to Judge Briones concerning the deficiencies in the compliance with the contract terms and with the evaluation services of LKG. And there were also mailings that the defendant, Madrid, and his co-conspirators went to Judge Briones and prepared documents for her to then mail a response to the federal agency about the deficiencies of LKG's performance on the contract here for the Board of Children's. So there were mailings within the statute of limitations period. Excuse me. On the speedy trial issues, counsel was talking about the court's text message and he claims that there was nothing to explain in the court's later order because the text message simply did not reference the speedy trial. But the text message entry, which apparently is a common thing for district court judges to do, specifically referenced the government's motion. It said references document 60. And in looking at the document, that is the government's motion to dismiss. Excuse me. I think my allergies are getting the better of me here. And in other words, then the court did grant the government's motion. About his argument about the government was only . . . Did document 60 reference the complex . . . having a designated complex case as well as the speedy trial act? Yes, it did, Your Honor. I thought so. And then as the court went back and explained in its order that it was meant to grant the entirety of the government's motion. Concerning counsel's argument about the government only asked for a continuance until the next document call, it actually, the order attached to the motion had a blank for the date. And the court explained that he was granting it as a complex case, that he was tolling the speedy trial clock here. And in other words, his argument simply is not supported by the record here. With all due respect, I mean, I know he's arguing for his client. I don't mean any dispersions there, but as far as the motion to . . . Oh, I'm sorry. As far as the motion to compel production of grand jury transcripts, the standard of review here is for an abuse of discretion in reviewing the district court's order dismissing the motion to compel. And in order to show an abuse of discretion, he has to show compelling prejudice here. And the district court set out in its order that there was no compelling prejudice here. I don't know the facts and circumstances behind the first indictment. I wasn't the trial attorney. But I know that mistakes happen, and that doesn't necessarily constitute perjury. And in his response brief, counsel said that I had never responded or denied that it was perjury. And, of course, I do wholeheartedly. Mistakes were made. The government went back and superseded, removed those portions of the indictment. And the defendant was tried upon the superseding indictment, and he cannot show any compelling prejudice here. And as the court stated, the superseding indictment removed those parts, and so there was no prejudice here. And I believe counsel referred to misrepresentations in the original indictment. However, I think there's nothing in the record to support that these were misrepresentations, perhaps mistakes, that were corrected in the superseding indictment and did not cause any prejudice to the defendant here. Well, what about his statute of limitations argument? That sounded to me like he was alleging prejudice. Well, the December 21st check from Garcia to Zavala, that was hand-delivered, but there were also subsequent mailings. The superseding indictment removed the mailings that he claimed were outside of the statute of limitations. And the original indictment was still pending at the time of the superseding indictment. I'm not sure that I—I think I lost my train of thought. Could you ask me again? Well, he claims that because the original indictment is still pending, I guess to this good day, the superseding indictment, in effect, relates back for statute of limitations purposes to the original indictment. And I think that's where his argument is that the original indictment, which had these, what you might call, allegedly flawed provisions in it, counts in it, thereby prejudiced his case. I guess, I mean, so what's your answer to that? Well, the original indictment was still pending, and there were still counts of that original indictment that were incorporated in the superseding indictment. Okay. I've got it. I've got it. Yeah. So those— Those counts were part of the original indictment. It isn't a matter of adding new counts, which then had no predicate. Right. The original indictment was—I think it was 17 or 18 counts, and the superseding indictment was three. But the conspiracy count remained. All that was still pending. I mean, the superseding indictment incorporated those counts, if I've answered your question. Sorry. Regarding the sufficiency of the evidence that counsel began to argue, I think it's overwhelmingly clear that although he complains that there was no direct evidence that the defendant was involved in these mailings like the bribery to Judge Briones, it's overwhelmingly clear. From the facts of the case that the defendant was all over this entire series of transactions. In fact, Garcia, the co-defendant and co-conspirator, testified that it was the defendant, Madrid, who told him that they were going to go meet with Jan Zavala about getting money to Judge Briones. In other words, Garcia was saying this was Madrid's idea, to meet with her. Then they meet with her and discuss the payments to her. The arrangement was that they would pay Jan Zavala $3,000, Zavala would keep $1,000, and then send $2,000 to Judge Briones. Zavala testified that Judge Briones explained to her that it had to be this way because she was afraid of the appearance of a conflict of interest. The defendant, Madrid, was obviously involved in that as well as other things. For example, when the federal agency, SAMHSA, complained about the defendant, Garcia's company, LKG, not performing and not providing the services and not providing in-kind services, it was Madrid and Garcia and some others who provided documents and advice to Judge Briones on how to respond to the points set out in SAMHSA's letter to her. Then she used that information to then send a response to SAMHSA trying to keep this whole contract going and the payments to the defendant, Madrid, who received the majority of the money that was stolen here. I'm sorry. What happened to Judge Briones? She pled guilty and was sentenced. I don't remember the number of months she served. She was not part of this indictment. What about the replacement, Cobb, or whatever the name was? Cobb was also prosecuted. I don't live in the El Paso area, so I wasn't privy to all the newspaper reports, but apparently it was quite a deal. He also was prosecuted. Again, he talks about the payments to Judge Cobb should not have come into play during the trial against Madrid. That's one of the issues that he had raised in his brief. Obviously, it was a continuing process. Judge Briones was the county judge who had the authority of supervising this federal program and was the person responsible. I think they called her the principal investigator. Then when she was no longer in office, it was Cobb who took over. It was Cobb who told them that they needed money in order to earn his support. They all met at a restaurant and handed him envelopes of cash. It was just a continuing series of events where these defendants were conspiring to get the money from the federal program and to keep this whole project going and to earn the support of Judge Cobb as the county judge to keep them on the contract. In fact, they were intending to renew the contract and keep this going for another year. That obviously fell through with the help of Lisa Tomako and others who blew the whistle on this deal. I think I've covered his comments that he made. Does the court have any questions or any other issues they wish me to address before I stop breathing altogether? You better sit down, don't you think? Oh, well. I have pulmonary fibrosis. It's a continuing thing. I apologize. I'm sure it's not pleasant to listen to. Thank you. Thank you, Mr. Embry. As it did at the trial court level and again on appeal, the government uses the words overwhelmingly clear and all over to try to establish that Madrid knew about the payments. Judges, it's this simple. Is there anything in the record that the court or any of the parties can point to to establish that Madrid knew that money was going to Judge Briones? And it's convenient to use the words overwhelmingly clear and all over, but the bottom line is this. There is no evidence in the record. There's certainly no documentary evidence. There's no emails. There's nothing. What about the Zavala testimony? That actually is the most helpful to the defendant. I'm glad you asked about that, Your Honor, because I pointedly asked her at the trial, do you remember discussing that payments were going to go to Briones in front of Madrid, yes or no? And her answer was unequivocally no. That's the case with respect to sufficiency. Maybe it was Garcia I was thinking of. Didn't he testify that giving the money to Zavala was a way of getting money to the judge? He may have, but that may have been something between him and Zavala and Briones. He certainly didn't say anything that he had an agreement with Madrid. See, and that's the case, Your Honor. Is there anything in the record showing that Madrid knew about it? Well, they had all those meetings that were testified to by Garcia and Zavala. Of course they had meetings. Judge Briones was the principal investigator on the contract. The fact that they had meetings doesn't mean that they were discussing bribes. She was the one, not statutorily, but charged by the federal agency to run the contract, and Madrid worked on it. Of course they had meetings. They had to. But the question is what is their time knowledge of Zavala's payments to Briones to Madrid, and there isn't any. There just isn't. Your Honor, going back to your question about the grand jury perjury, I understand the government's position, but the issue is more this simple. If the original indictment and every single one of the counts is soaked by the perjury, they took pains to say that every single count refers to, relies on, and incorporates the introduction, which included the perjury stuff. If every single one of those counts is soaked in that, and had I been given the grand jury transcripts and been afforded the opportunity to move to dismiss it, then the original indictment is gone. The superseding indictment was returned in August of 2012, and it is barred by limitations. I understand Ms. Embry's argument. It's that the counts of the superseding indictment that are the subject of the convictions here were also in the original indictment. Some. But if the original indictment... Well, I know, but in order for you to prevail, you've got to dismiss the entire indictment. Exactly. Well, or the counts... Again, every single one of those counts of conviction relies on the perjury. And my contention is, and when the court goes back and looks at the brief and the record, that mail fraud, those mailings were used to keep it within limitations. Now, Your Honor, I understand your question. Were there other mailings? Of course there were, and they were alleged. But the record doesn't support a contention that those mailings were done in furtherance of the conspiracy. So the only thing that they can... But that's what opposing counsel said. But the record doesn't bear that. But you have to look at the contents of the letter. For example, that letter from Samsha to Dolores Briones is a letter from the federal agency to the principal investigator charged with overseeing the contract. So they have to make some kind of argument to say, if they want to save themselves on limitations, that that was in furtherance of the conspiracy. But they don't even make that in their brief. I mean that's not even an argument they make on appeal. So my point, Judge King, is that if every single one of those counts is soaked in the perjury, the original indictment goes away and the August 2012 superseding indictment is barred by limitations. I should have been afforded the opportunity to get that transcript and at least litigate that on behalf of Mr. Madrid. I don't think any of the case law better shows that a defense counsel has a prima facie, good faith basis to allege a need for grand jury transcripts than this one. I laid it out with bank records, FBI records, and even the district judge himself indicated he was troubled by what was produced in the evidence that I tendered. Thank you.